Timothy Caron, Esq.
Celedon Law
277 Main Street, Suite 305
Marlborough, MA 01752
Tel: (508) 573-3170

Attorney for Petitioner

## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **LUCAS DOS SANTOS AMARAL** ) <br> ) <br> Petitioner, ) <br> ) <br> v. ) <br> ) <br> Antone Moniz, Superintendent of Plymouth County ) <br> Correctional Facility; ) <br> ) <br> ) <br> Respondent. ) <br> ) | Case No. __25-10279__ <br><br> ***AMENDED*** **PETITION FOR WRIT OF HABEAS CORPUS** <br><br> **ORAL ARGUMENT REQUESTED** |

## INTRODUCTION

1. Lucas Dos Santos Amaral (hereinafter referred to as "Lucas," "Mr. Dos Santos Amaral," or "Petitioner") seeks to file this *Amended* Petition for Writ of Habeas Corpus with the Court, pursuant to Fed. R. Civ. P. 15(a)(1)(A).

2. Mr. Dos Santos Amaral is a Brazilian citizen who entered the U.S. on June 13, 2017, on a B-2 Visa. Prior to detention, Lucas was residing at 51 Greenwood Street, Marlborough, MA, 01752. Lucas currently has a custody redetermination hearing scheduled before the Chelmsford Immigration Court on February 13, 2025 at 1:00 p.m., as well as a master calendar hearing before the same court on March 11, 2025 at 1:30 p.m.

1

3. Since entering the U.S., Mr. Dos Santos Amaral has established strong ties to the community. Mr. Dos Santos Amaral is married to Suyanne Boechat Amaral, who is a DACA recipient, and together they have a 3-year-old U.S. Citizen daughter, and are expecting their second child. Mr. Dos Santos Amaral was detained on January 27, 2025, by Immigration and Customs Enforcement ("ICE"). Lucas has been placed in removal proceedings. He does not have any criminal records, he is not a flight risk, and he has established firm ties to the community.

4. Undersigned Counsel has filed a bond motion with the Chelmsford Immigration Court, and the aforementioned hearings before that court have been scheduled. However, Undersigned Counsel recently learned through email correspondence with a U.S. government attorney that ICE has allegedly transferred Petitioner to a facility in Texas, for an unknown reason. At this time, no document evidence of such a transfer has been provided to Petitioner or Undersigned Counsel. Petitioner's detention violates both the Fourth and Fifth Amendments of the United States Constitution.

5. Accordingly, to vindicate Petitioner's statutory and constitutional regulatory rights, this Court should grant the instant petition for a writ of habeas corpus. Mr. Dos Santos Amaral requests this Court to immediately release him from detention, also enjoining Respondent from re-detaining him unless there are changes in the circumstances that would justify detention.

## JURISDICTION

6. This action arises under the Constitution of the United States and the Immigration and Nationality Act (INA), 8 U.S.C. § 1101 *et seq.*

7. This Court has subject matter jurisdiction under 28 U.S.C. § 2241 (habeas corpus), and 28 U.S.C. § 1331 (federal question).

8. This Court may grant relief under the habeas corpus statutes, 28 U.S.C. § 2241 *et. seq.*, the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*, and the All Writs Act, 28 U.S.C. § 1651.

## VENUE

9. Venue is proper in this District because Respondent is an officer, employee, or agency of the United States, and a substantial part of the events or omissions giving rise to his claims occurred in this District. Additionally, Petitioner resides in this District and has been initially detained within this District. 28 U.S.C. § 2241.

## PARTIES

10. Petitioner is a Brazilian citizen who overstayed his B-2 visa. He has been detained at Plymouth County Correctional Facility. He is in custody and under the direct control of Respondent and their agents.

11. Respondent, Antone Moniz, is named in his official capacity as the Superintendent of the Plymouth County Correctional Facility. In this capacity, Mr. Moniz has custody over Mr. Dos Santos Amaral because ICE contracts the Plymouth County Correctional Facility to house immigration detainees, including Mr. Dos Santos Amaral.

## STATEMENT OF FACTS

12. Lucas dos Santos Amaral was born in Rio de Janeiro, Brazil, on June 9, 1995. Lucas entered the United States for the first and only time on or about June 13, 2017, on a B-2 visa. Prior to detention, Lucas was residing at 51 Greenwood Street, Marlborough, MA, 01752.

13. Since entering the U.S., Lucas has established strong ties to the community. Lucas is married to Suyanne Boechat Amaral, who is a DACA Recipient, and together they have a 3-year-old U.S. Citizen daughter, and Suyanne is pregnant of their second child.

14. Lucas was detained on January 27, 2025, by ICE on his way to work. On that date, Lucas had his car stopped by ICE for no apparent reason. Petitioner believes that ICE was doing a "stop and identify" operation. The officer asked the Petitioner for his ID and immigration status. Once he informed them that he was an overstay, he was detained and later transferred to Plymouth Detention Center.

15. Following his detention, Undersigned Counsel filed a Request for Release with ICE and requested a Bond Hearing with the Immigration Court. The Request for Release was denied without further explanation, and a custody redetermination was scheduled before the Chelmsford Immigration Court on February 13, 2025 at 1:00 p.m. A master calendar hearing has also been scheduled before the same court on March 11, 2025 at 1:30 p.m.

16. Undersigned Counsel learned that ICE has since allegedly transferred Petitioner to Texas, for an unknown reason. Lucas does not have a criminal record, and the reason for his detention remains unclear, as there is no reason to believe that he could be a danger to the community or a flight risk. Petitioner is also not tied to any reasonably foreseeable removal.

## **LEGAL FRAMEWORK**

17. Under 8 U.S.C. § 1357(a)(2), ICE officers may conduct warrantless arrests if there is "reason to believe that the alien [] [to be] arrested is [present] in the United States in violation of any [U.S. immigration] law and is likely to escape before a warrant can be

obtained for [the] arrest." The "reason to believe" standard requires ICE officers to have probable cause that an individual is in the United States in violation of U.S. immigration laws and probable cause that the individual is likely to escape before a warrant can be obtained for the arrest. *Nava v. Dep't of Homeland Sec.*, 435 F.Supp.3d 880, 885 (N.D. Ill. 2020). The mere presence within the United States in violation of U.S. immigration law is not, by itself, sufficient to conclude that an alien is likely to escape before a warrant for arrest can be obtained. *Id.*

18. The Supreme Court held in *Zadvydas v. Davis* that civil incarceration is only acceptable "in certain special and narrow non-punitive circumstances, where a special justification . . . outweighs the individual's constitutionally protected interest." 533 U.S. 678, 690 (2001). The Supreme Court further established the principle that noncitizens in deportation or removal proceedings are just as entitled to due process protections as anyone else. *See Zadvydas*, 533 U.S. at 690 (2001) ("A statute permitting indefinite detention of an alien would raise a serious constitutional problem. The Fifth Amendment's Due Process Clause forbids the Government to 'depriv[e]" any "person . . . of . . . liberty . . . without due process of law.'"). The First Circuit in *Hernandez-Lara v. Lyons* also relied on the Supreme Court's civil detention cases in its due process analysis, supported by the Supreme Court's reliance on such cases in *Zadvydas*, an immigration detention case. 10 F.4th 19, 36-38 (1st Cir. 2021).

19. Mr. Dos Santos Amaral's detention by DHS violates his rights under the Due Process Clause of the Fifth Amendment to the United States Constitution, as well as his rights under the Fourth Amendment of the United States Constitution.

## CLAIMS FOR RELIEF

### COUNT ONE

### Violation of Fifth Amendment Right to Due Process

20. Mr. Dos.Santos Amaral's detention by DHS violates his rights under the Due Process Clause of the Fifth Amendment to the United States Constitution. The allegations in the above paragraphs are realleged and incorporated herein. Immigration detention violates due process if it is not reasonably related to the purpose of ensuring a noncitizen's removal from the United States. *See Zadvydas v. Davis*, 533 U.S. 678, 690-92, 699-700 (2001); *Jackson v. Indiana*, 406 U.S. 715, 738 (1972). Where removal is not reasonably foreseeable, detention cannot be reasonably related to the purpose of effectuating removal and is unlawful. *See id.* at 699-700.

21. The Supreme Court has also established the principle that noncitizens in deportation or removal proceedings are just as entitled to due process protections as anyone else. *See Zadvydas*, 533 U.S. at 690 (2001) ("A statute permitting indefinite detention of an alien would raise a serious constitutional problem. The Fifth Amendment's Due Process Clause forbids the Government to 'depriv[e]' any "person . . . of . . . liberty . . . without due process of law.'")

22. Here, there is no reason to justify Petitioner's detention. Petitioner does not have any criminal record and, therefore, is not subject to detention under 8 U.S.C. § 1226(c). He is also not a flight risk, as he has family here and strong ties to the community. Petitioner cannot be expected to be reasonably removed from the country, and his detention violates the Due Process Clause of the Fifth Amendment. Furthermore, as an alternative to detention, ICE could employ its Intensive Supervision Appearance

Program ("ISAP").[1] Government data suggests that this program has been highly successful in preventing flight risk.[2]

## COUNT TWO

### Violation of Fourth Amendment Right to Protection from Unreasonable Searches and Seizures by the Government

23. In *United States v. Brignoni–Ponce*, 422 U.S. 873, 95 S.Ct. 2574 (1975), the Supreme Court sought to determine what standard of proof, if any, an immigration officer must apply to stop and detain individuals to investigate their immigration status. *See* 422 U.S. at 880–82, 95 S.Ct. 2574. The Court stated that, just as in the criminal context, an immigration officer "must have a reasonable suspicion" to justify briefly stopping individuals to question them "about their citizenship and immigration status...but any further detention...*must be based on ... probable cause.*" *Id.* at 881–82, 95 S.Ct. 2574 (emphasis added) (citing *Terry v. Ohio*, 392 U.S. 1, at 29, 88 S.Ct. 1868); *see also id.* at 884 ("[T]he Fourth Amendment ...forbids stopping or detaining persons for questioning about their citizenship on less than a reasonable suspicion that they may be aliens.").

24. The First Circuit has required that immigration officers have reasonable suspicion to briefly stop individuals to question them regarding their immigration status and probable cause for any further arrest and detention. *See, e.g., United States v. Mendez-de Jesus,* 85 F.3d 1, 3 (1st Cir.1996) (recognizing that *Brignoni–Ponce* stands for "the principle that an individual may not be [briefly] detained for questioning about

---

[1] *ERO Alternatives to Detention Infographic*, U.S. Immigration and Customs Enforcement, Apr. 2021, available at https://www.ice.gov/doclib/detention/atdInfographic.pdf.
[2] *Immigration: Alternatives to Detention (ATD) Programs*, Congressional Research Service, Jul. 8, 2019, available at https://crsreports.congress.gov/product/pdf/R/R45804 (citing GAO study of ISAP program where 99% of those monitored returned to court).

citizenship absent reasonable suspicion that the person is an illegal alien"); *Lopez v. Garriga*, 917 F.2d 63, 69 (1st Cir.1990) (noting that detention to inquire about an individual's immigration status is "a seizure and implicate[s] the [F]ourth [A]mendment" (citing *Immigration & Naturalization Serv. v. Delgado*, 466 U.S. 210, 216–17, 104 S.Ct. 1758, 80 L.Ed.2d 247 (1984) ; *Terry*, 392 U.S. at 21, 88 S.Ct. 1868 )); *Navia–Duran v. Immigration & Naturalization Serv.*, 568 F.2d 803, 809 n. 7 (1st Cir.1977) (recognizing that an immigration arrest and detention needs to be "supported by probable cause or reasonable suspicion").

25. Statutory authority for warrantless enforcement actions is provided in 8 U.S.C. § 1357. Under 8 U.S.C. § 1357(a)(2), ICE officers may conduct warrantless arrests if there is "reason to believe" that the potential arrestee (1) "is in the United States in violation of [an immigration] law or regulation" and (2) "is likely to escape before a warrant can be obtained for his arrest." *Nava v. Dep't of Homeland Sec.*, 435 F.Supp.3d 880, 885 (N.D. Ill. 2020). The mere presence within the United States in violation of U.S. immigration law is not, by itself, sufficient to conclude that an alien is likely to escape before a warrant for arrest can be obtained. *Id.*

26. Courts have consistently held that the "reason to believe" phrase in § 1357 "must be read in light of constitutional standards, so that 'reason to believe' must be considered the equivalent of probable cause." *Au Yi Lau v. United States Immigration & Nat. Serv.*, 445 F.2d 217, 222 (D.C. Cir. 1971); *see, e.g., Tejeda–Mata v. Immigration & Naturalization Serv.*, 626 F.2d 721, 725 (9th Cir.1980) ("The phrase 'has reason to believe' [in § 1357 ] has been equated with the constitutional requirement of probable cause."); *United States v. Cantu,* 519 F.2d 494, 496 (7th Cir.1975) ("The words [in §

1357 ] of the statute 'reason to believe' are properly taken to signify probable cause."); *see also United States v. Quintana,* 623 F.3d 1237, 1239 (8th Cir.2010) ("Because the Fourth Amendment applies to arrests of illegal aliens, the term 'reason to believe' in § 1357(a)(2) means constitutionally required probable cause.").

27. Petitioner's arrest, which led to his subsequent detention, was unlawful and in violation of his rights under the Fourth Amendment to the United States Constitution. The allegations in the above paragraphs are realleged and incorporated herein. The ICE officers who arrested him stopped his vehicle without a warrant and without probable cause. Through racial profiling, Petitioner was stopped and asked about his immigration status, which led to his arrest and incarceration.

28. In the case of *Nava v. Dep't of Homeland Sec.*, 435 F.Supp.3d 880, 885 (N.D. Ill. 2020), ICE has agreed in the settlement to follow certain procedures regarding warrantless arrests and vehicle stops. The procedures were not adopted in this case, and the Petitioner was stopped without reasonable suspicion.

29. For these reasons, Petitioner's arrest and detention violate 8 U.S.C. § 1357(a)(2), as well as the Fourth Amendment to the United States Constitution.

## PRAYER FOR RELIEF

Wherefore, Petitioner respectfully requests this Court to grant the following:

(1) Assume jurisdiction over this matter;

(2) Issue an Order to Show Cause ordering Respondent to show cause why this Petition should not be granted within three days.

9

(3) Declare that Petitioner's detention violates the Due Process Clause of the Fifth Amendment, as well as the Fourth Amendment.

(4) Issue a Writ of Habeas Corpus ordering Respondent to release Petitioner immediately.

(5) Award Petitioner attorney's fees and costs under the Equal Access to Justice Act, and on any other basis justified under law; and

(6) Grant any further relief this Court deems just and proper.

Respectfully submitted,

*/s/ Timothy G. Caron*
Timothy G. Caron
*Counsel for Petitioner*

Dated: February 7, 2025

## **VERIFICATION PURSUANT TO 28 U.S.C. § 2242**

I represent Petitioner Lucas dos Santos Amaral and submit this verification on his behalf. I hereby verify that the factual statements made in the foregoing Petition for Writ of Habeas Corpus are true and correct to the best of my knowledge.

Dated this seventh day of February, 2025.

_____
Timothy G. Caron

11